UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 21-23324-CIV-KING/BECERRA

ISABELLA MARINE CORP.,
OCEAN RESORT, LLC, and
PETER JOACHIM ALBANO,

    *Plaintiff,*

vs.

PATRICK J. PERIH

    *Defendant.*
_____/

### DEFENDANT'S VERIFIED, RE-FILED MOTION FOR FEES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 AND MEMORANDUM OF LAW

    Defendant, PATRICK J. PERIH, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 11(c), Local Rule 7.1, and this Court's September 26, 2024 Order (DE 107), requests that this Court award him the $20,825 in attorney fees and $1,404.72 in non-taxable costs that he incurred as a direct result of Plaintiffs and/or Plaintiffs' counsel's violation of Rule 11(b).

### Background

    Plaintiffs initiated this lawsuit under the Court's admiralty jurisdiction on September 14, 2021 (DE 1). Plaintiffs alleged that Defendant negligently operated his vessel past the Bill Bird Marina on June 17, 2019 and caused them damage (DE 8: paras. 7& 9). Specifically, relying on the invoices and estimates attached to their pleadings, Plaintiffs collectively demanded more than $472,000 in damages for repairs to their boats and personal injury to Peter Albano. [Doc. 8, wherefore clauses; 8-2; 8-3; 8-4].

1

Testimony and documents obtained during discovery showed that Plaintiffs' damages claims lacked a sufficient factual and legal basis.[1]  Of particular note, it became apparent during discovery that the invoices and estimates attached to Plaintiffs' Amended Complaint were fraudulent.  Further, during discovery, Plaintiffs used their claims to harass and/or threaten Defendant and third parties.  *See* D.E. 52, pp. 8-9; *see also* D.E. 53-1.[2]

On July 25, 2023, Defendant served Plaintiffs with a draft motion for sanctions under Rule 11.  *See* DE 52-13 (Email Serving Rule 11).  Plaintiffs failed to withdraw their claims during the twenty-one day safe harbor period provided for by Rule 11.  As such, on August 22, 2023, Defendant filed a Rule 11 motion against Plaintiffs, based on the lack of evidentiary and legal support for the damages element of Plaintiffs' claims and, also, Plaintiffs' bad faith and/or improper conduct (DE 52, pp. 8-11).

Specifically, in his August 22, 2023 Rule 11 motion, Defendant requested that the court "strike Plaintiffs' pleadings and award Defendant fees and costs arising from Plaintiffs' misconduct and related to this Motion" (DE 52, p. 13).  That same month, Defendant also filed a motion for summary judgment, arguing that there was insufficient summary judgment evidence to establish the causation and damages elements of Plaintiffs' claim (DE 50, p. 2).

On March 29, 2024, this Court entered orders granting Defendant's summary judgment motion and providing for Final Judgment in Defendant's favor (DEs 82 & 83).  In reaching its

---

[1] *See e.g.*, D.E. 49, paras. 18-21 (discussing Jim Edwards' testimony indicating that neither he nor his company prepared the invoices bearing his and his company's name); D.E. 49, para. 26 (discussing Ocean Resort, LLC's sworn admission that its vessel did not need to be repainted and its claim was limited to $15,300, not $160,821); D.E. 49, para. 31 (discussing evidence that the value of Plaintiff Albano's vessel was less than half of the repair costs claimed in Plaintiffs' Amended Complaint); D.E. 49, para. 32 (indicating, contrary to the Amended Complaint, that Plaintiff Albano was not seeking any amount for personal injuries); D.E. 49, paras. 6-7 & 16 (discussing witness testimony indicating that Plaintiffs' vessel damage was caused by an event other than Defendant's passage by the Bill Bird Marina).

[2] Indeed, Plaintiffs' harassing conduct appears to have prompted a third party to initiate a second lawsuit against the parties in this suit on July 31, 2023.  *See* D.E. 53; *see also* 53-1.

decision on summary judgment, this Court concluded that there was, indeed, insufficient record evidence regarding the damages and causation elements of Plaintiffs' negligence claim to permit the suit to proceed to trial (DE 82: pp. 9, 11-19). Furthermore, in its order granting summary judgment, the Court denied Defendant's pending Rule 11 motion as moot, but expressly provided Defendant "30 days from the entry of [that] Order to file its Motion for Attorneys' Fees in light of Final Judgment" (DE 82, p. 19). As such, Defendant, in light of the Final Judgment, submitted a second motion to recover its attorney fees and nontaxable costs directly resulting from Plaintiffs and/or Plaintiffs' counsel's violation of Rule 11(b) (DE 91).

On September 26, 2024, this Court denied Defendant's second motion for attorneys' fees and costs without prejudice, with leave to refile its requests for fees and costs "within 14 days of the date on which mandate issues on appeal" (DE 107). On October 16, 2024, the Eleventh Circuit Court of Appeal entered a Clerk's Order of Dismissal in this matter for failure to prosecute, and provided this Court notice that such dismissal is "issued as the mandate of this court" (DE 109, p. 1). To date, the appellate matter has not been reopened. *See* **Exhibit 3**, No Action Notice. As such, Defendant is re-filing this motion for fees and non-taxable costs.

## MEMORANDUM OF LAW

### A. Introduction

Plaintiffs attached fraudulent invoices and estimates to their pleadings to improperly inflate their damages claim. Plaintiffs then used these fraudulently inflated claims to harass Defendant and third parties. Further, discovery in this matter revealed that, apart from these fraudulent invoices and estimates, Plaintiffs had no material evidentiary and/or legal basis for their damage claims.

Defendant provided Plaintiffs notice of his intent to seek sanctions for their violation of Rule 11(b) on July 25, 2023. *See* DE 52-13 (Email Serving Rule 11). Plaintiffs failed to

3

withdraw their claims during the twenty-one day safe harbor period provided for by Rule 11. Instead, Plaintiffs continued to maintain this action at the Defendant's considerable expense.

Based on the foregoing and as delineated in paragraph F below, Defendant requests that this Court award him the $20,825 in attorney fees and $1,404.72 in non-taxable costs that he incurred as a direct result of Plaintiffs' and/or Plaintiffs' counsel's violation of Rule 11(b). Specifically, pursuant to this motion, Defendant seeks to recover the fees and non-taxable costs he incurred related to the deposition of Jim Edwards; the fees Defendant incurred as a result of Plaintiffs' harassing discovery to third parties; and the attorney fees and non-taxable costs Defendant incurred following the service of his draft Rule 11 motion on July 25, 2023.

**B. Applicable Law**

This motion is principally governed by paragraphs (b) and (c) of Federal Rule of Civil Procedure 11. In part, Rule 11(b) provides:

> REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—*whether by signing, filing, submitting, or later advocating it*—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .
>
> . . . .

*See* Fed. R. Civ. P. 11(b)(emphasis added).

Paragraph(c)(1) of Rule 11 further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *See* Fed. R. Civ. P. 11; *see also Thomas v. Evans*, 880 F.2d 1235, 1239 (11th Cir. 1989)("An attorney or a party may be sanctioned under Rule 11 for filing a pleading that: (1) has no reasonable legal basis; (2) has no reasonable factual basis; or, (3) is filed for an improper purpose."). The rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." Fed. R. Civ. P. 11, advisory committee's note (1993 Amendment, subdivisions (b) and (c)).

The sanction imposed may include the movant's "reasonable expenses, including attorney's fees, incurred for the motion" or "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *See* Fed. R. Civ. P. 11(c)(2 & 4). Such sanctions are intended to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *See* Fed. R. Civ. P. 11 advisory committee's note (1983 Amendment).

Finally, the case law reflects that Rule 11 motion is a "collateral" motion normally determined at the conclusion of litigation. *See Baker v. Alderman*, 158 F.3d 516, 523 (11th Cir. 1998)("Rule 11 motions are collateral to an action . . . ."). Indeed, the Eleventh Circuit has specifically ruled that motions for sanctions under Rule 11 may be filed after judgment has been rendered. *See Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1348 (11th Cir. 2022)("If a party fulfills the safe harbor requirement by serving a Rule 11 sanctions motion at

least 21 days before final judgment, then she may file that motion after the judgment is entered.").

### C. Plaintiffs Violated Rule 11(b)(1) by Filing and Later Advocating for its Fraudulently Inflated Claims

Again, in this suit, Plaintiffs contended that they were collectively entitled to more than $472,000 for "significant" property damage to their boats and personal injury to Peter Albano. [Doc. 8, wherefore clauses; 8-2; 8-3; 8-4]. To support their inflated claims, Plaintiffs filed as exhibits to their Amended Complaint a series of invoices and estimates, purportedly prepared by Jim Edwards of Fort Lauderdale Finishes, LLC around the time of the alleged incident.[3] [D.E. 8-1, 8-2, 8-3, & 8-4].

Discovery in this matter revealed that the invoices and estimates attached to Plaintiffs' pleadings were neither authentic nor accurate. Specifically, Defendant took the deposition of Mr. Edwards on April 28, 2023. Mr. Edwards testified that he did not prepare the documents attached to the Plaintiffs' pleading and bearing his and his company's name. *See* DE 52-6 (Deposition Tr. Excerpt of Jim Edwards), p. 91, line 23 to p. 92, line 2; *see also* DE 71, p. 4 (analyzing Plaintiffs' response to Mr. Edward's testimony).

Moreover, Mr. Edwards testified that while he had performed the work identified in the emergency repairs invoices, he could not say *when* he performed the work. *See* DE 52-6 (Deposition Tr. Excerpt of Jim Edwards), p. 94, lines 6-13. Further, Mr. Edwards testified that

---

[3] As pled, Plaintiff Isabella Marine Corp. owned the vessel known as the "Isabella"; Plaintiff Ocean Resort, LLC owned the vessel known as the "Audacity"; and Plaintiff Peter Albano owned an unnamed Wellcraft manufactured vessel. [D.E. 8, paras. 3-5]. The invoices attached to Plaintiffs' Amended Complaint purported to be for "emergency repairs" performed as to the Audacity and the Isabella and, also, "estimates" for further work to be performed on all three vessels. [DE 8-2, 8-3, and 8-4]. The invoices indicated that the cost of "emergency repairs" for the Isabella and Audacity were $10,165 per vessel. [D.E. 8-2 and 8-3]. The estimates indicate that the total cost of further repairs to the Isabella to be $192,024 and the cost of further repairs to the Audacity to be $160,821. [D.E. 8-2 and 8-3]. The estimates for future repairs primarily reflect the cost of wholly repainting the Audacity and the Isabella. *Id.*

the invoices did not reflect the correct charge for the services he provided. *See* DE 52-6 (Deposition Tr. Excerpt of Jim Edwards), p. 95, lines 22-23; p. 113, line 2 to p. 114, line 11. Additionally, he testified that he had not been paid for the emergency repairs to Ocean Resort, LLC's vessel and had "pretty much wrote it off." *See* DE 52-6 (Deposition Tr. Excerpt of Jim Edwards), p. 108, lines 10-16. Finally, notwithstanding the invoice showing his company's estimate for the Wellcraft vessel, Mr. Edwards indicated that he has never even been aboard that vessel. *See* DE 8-4; *see also* DE 52-6 (Depo. Tr. Excerpt of Jim Edwards), p. 37, lines 19-23.

Plaintiffs later pursued discovery regarding their fraudulently inflated damages claim as a means of harassing Defendant. Specifically, Plaintiffs argued that they have a large maritime lien against Defendant's former vessel and threatened to arrest Defendant's former vessel to obtain leverage in this suit. Plaintiff Albano's harassing conduct in this regard is documented in his own deposition testimony. *See* DE 52-11(Excerpt of Albano Deposition), pp. 55-62. After being asked for evidence supporting his claims, Mr. Albano testified:

> THE WITNESS: I want that boat arrested. I want -- Adam, I am going on the record. I want that boat that this guy fraudulently sold to that other guy in Texas arrested.

*See* DE 52-11(Excerpt of Albano Deposition), p. 58, lines 20-23. Later, Mr. Albano continued:

> THE WITNESS: That's what you are drilling me about.
>
> MS. ABRAHAM PEARCE: Sure. Mr. Albano, I appreciate. You brought a lawsuit here. There is certain information that I need to –
>
> THE WITNESS: Certain information that you were given a lot of opportunities before you got on board now to come down and check. And nobody bothered. Okay. You know why? Because he is full of shit. He thought this whole thing was going to disappear and it's not. I'm telling you now, that I'm going to take this right to the max. And believe me when I tell you, you know this, I have the money and time to do it.
>     . . . .
> THE WITNESS: Tell your client that's what's coming.

*See* DE 52-11(Excerpt of Albano Deposition), p. 60, lines 10-23.  After the above deposition, Plaintiffs' counsel initiated third party discovery to the individual who purchased Defendant's former vessel and the broker involved in that sale. *See* DE 52-12 (Notices of Intent to Serve Subpoenas for Deposition by Written Questions to Dr. Qamar UL Arfeen and Tom George Yacht Sales Inc.).

In sum, Plaintiffs' actions in fraudulently presenting inflated damages claims and, then, using those inflated claims as a tool of harassment amounted to bad faith and a violation of Rule 11(b)(1).  Plaintiffs conduct needlessly increased both the attorney fees and costs in this matter by requiring Defendant to depose Mr. Edwards and address Plaintiffs' discovery to Dr. Arfeen and Tom George.  Defendant asks that this Court award Defendant the costs and fees he incurred as a direct result of Plaintiffs' improper conduct, including his attorney fees and non-taxable costs related to the deposition of Mr. Edwards and the attorney fees he incurred as a result of Plaintiffs' service of the discovery to Dr. Arfeen and Tom George.

**D. Plaintiffs Presentation of Claims Lacking Evidentiary Support Violated Rule 11(b)3**

Again, in their Amended Complaint, Plaintiffs contended that they were entitled to more than $472,000 for "significant" property damage to their boats and personal injury to Peter Albano (DE 8).  In support of their claims, Plaintiffs filed both a portion of the Florida Fish and Wildlife Commission's ("FWC") Report and the aforementioned fraudulent repair invoices and estimates.  Discovery in this matter revealed that, apart from those invoices and estimates, there existed no material evidentiary basis for Plaintiffs' damage claims.

Specifically, Plaintffs' damages claims consisted of (1) the cost of past repairs, (2) the cost of unperformed future repairs, and (3) damages related to Mr. Albano's alleged personal

8

injury. Apart from the fraudulent invoices, no record evidence existed to support Plaintiffs' claim for past repairs. Specifically, Plaintiffs produced no receipts or other proof of payment (e.g. canceled checks or credit card invoices) showing whether, when, and/or how much they paid any vendor to repair vessel damage related to the alleged incident. Moreover, while Mr. Edwards testified that he had performed some work on two of the three boats, he could not say *when* he performed the work. *See* DE 52-6 (Deposition Tr. Excerpt of Jim Edwards), p. 94, lines 6-13. And, the marina where the subject vessels were docked had no records of Mr. Edwards or his company working there following the alleged incident.[4] *See* DE 52-8 (Composite Public Records Responses). As such, the evidence does not indicate that Mr. Edwards performed repairs to the subject vessels following the alleged incident.

Further, Plaintiffs' claims for future repairs (i.e. repainting the vessels) are also without evidentiary support. Specifically, with respect to the Isabella and the Audacity, the evidence indicates that the damage at issue is limited to some minor scrapes on the vessels' rub rails and bent ship to shore ladders. Indeed, the Corporate Representative for Ocean Resort specifically testified in deposition that there was no need to repaint the Audacity. *See* DE 52-3 (Deposition Testimony Excerpt for Ocean Resort's Corporate Representative), p. 87, lines 2-5. Moreover, Plaintiffs produced marine surveys for the Isabella and the Wellcraft vessel in discovery. *See* DE 52-4 (Survey for Isabella)(photos omitted) & DE 52-5(Survey for Wellcraft)(photos omitted). These surveys were prepared after the alleged incident, but fail to reflect the need for any repairs related to the alleged incident. *Id.*

---

[4] The Bill Bird Marina, where Plaintiffs' vessels were docked, has a vendor policy which requires vendors to "check in at the marina office whenever performing work related duties and be approved by the manager to do the work." *See* DE 52-7 (Public Records Response, Vendor Policy, para. 39F). A check-in and check-out log is kept by the marina office. *See* DE 52-7 (Public Records Response, Vendor Policy, para. 39G).

Finally, Mr. Albano produced no records to support his personal injury claim. Indeed, Officer Moschiano testified that he had no recollection of anyone reporting to him any personal injury and that, if they had, he would have documented it. *See* DE 52-9, p. 79, lines 12-18.

In sum, Plaintiffs' claims lacked the requisite evidentiary support. Nonetheless, Plaintiffs continued to maintain this lawsuit following service of Defendant's draft Rule 11 Motion on July 25, 2023. As such, Defendant requests that this Court award him the attorney fees he incurred in defending this suit following July 25, 2023 under paragraph (b)(3) of the rule.

### E. Plaintiffs Presented Claims for Damages Unsupported by Applicable Maritime Law In Violation of Rule 11(b)(2)

Finally, Plaintiffs Amended Complaint contends that Plaintiffs were entitled to recover the great expense of wholly repainting both the Audacity and the Isabella based on the minor, inconsequential paint damage reflected in the FWC's report. *See* DEs 8-1, 8-2, & 8-3. Plaintiffs' claim for damages was unsupported by existing maritime law. As such, Plaintiff and/or Plaintiffs' counsel violated Rule 11(b)(2) by maintaining these claims.

In the case of a maritime collision not resulting in a total loss of the vessel, a vessel owner is only entitled to recover for reasonable costs of "necessary" repairs and loss of earnings while such repairs are being made. *See Hatt 65, L.L.C. v. Kreitzberg*, 2009 WL 700771, at *2 (N.D. Fla. Mar. 16, 2009). This means that the plaintiffs in this action are only entitled to recover for repairs needed to avoid leaving the vessel essentially depreciated in market value or "inferior for practical use." *See Dominican Mar., S.A. v. M/V Inagua Beach*, 572 F.2d 892, 893 (1st Cir. 1978). The Second Circuit has explained:

> Any award must be calculated with recognition of the customary obligation of the injured party to minimize damages. In other words, he is only entitled to an award that would give him a boat as seaworthy and practically serviceable as before and not to an

> award, often much larger, sufficient to restore her to the identical condition she was in before the injury.
>
> The general effect of the authorities has been a denial of damages based upon replacement of an injured portion of a vessel in cases where repairs made at a substantially lower cost would render her as serviceable as before.

*See Zeller Marine Corp. v. Nessa Corp.*, 166 F.2d 32, 34 (2d Cir. 1948); *see also Dominican Mar., S.A. v. M/V Inagua Beach*, 572 F.2d 892, 893 (1st Cir. 1978)("[T]he owner is not entitled to recover depreciation in market value simply because prospective buyers may not bid as highly for a vessel that has been in collision or *because there are minor cosmetic defects* that distinguish the vessel from its condition before the accident occurred."); *Petition of Metropolitan Sand & Gravel Corp.*, 170 F.Supp. 675, 678 (E.D.N.Y.1958)(relying on the proposition that "where an injury can be perfectly repaired for all practical uses at slight expense, but . . . cannot be placed in exactly the same condition as new, except . . . at a very considerable expense, the court must hesitate in allowing damages on the basis of the latter mode of repair, especially where . . . though a long time has elapsed, no such repair has been made.").

As the FWC Report attached to Plaintiffs' own pleading demonstrates, the scope of damage to the Isabella and the Audacity potentially at issue here was limited to a small amount of scraped off paint from the vessels' rub rails and bent ship to shore ladders. *See* DE 8-1, p. 5 of 8 (description of damage); *see also* DE 52-9 (Moschiano Deposition Excerpt), p. 56, line 9 - p. 57, line 10; DE 52-9 (Moschiano Deposition Excerpt), p. 66, lines 15-25. The photos included in the full FWC Report illustrate exactly how little damage to the Audacity and Isabella is potentially attributable to Defendant's passage. *See* DE 52-1 (Full FWC Report), pp. 14-17 (photos of Isabella, labeled V4); DE 52-1 (Full FWC Report), pp. 22-25 (photos of Audacity, labeled V7). Apart from the rub rails, Officer Moschiano identified no damage to the hulls of

these vessels. Further, the damage to the small Wellcraft vessel potentially at issue here consists of only damage to the gel coat on the port side of the vessel and damage to the transom bracket. *See* DE 52-9 (Moschiano Deposition Excerpt), p. 68, lines 3-7; *see also* DE 52-1 (Full FWC Report), p. 4 of 25; DE 52-1 (Full FWC Report), pp. 17-19 (photos of Wellcraft, labeled V5).

Further, the Corporate Representative for Ocean Resort specifically testified in deposition that there was no need to repaint the Audacity. *See* DE 52-3 (Deposition Testimony Excerpt for Ocean Resort's Corporate Representative), p. 87, lines 2-5. Also, again, the marine surveys for the Isabella and the Wellcraft vessel, prepared after the alleged incident, failed to reflect the need for repairs related to the alleged incident. *See* DE 52-4 (Survey for Isabella)(photos omitted) & DE 52-5(Survey for Wellcraft)(photos omitted).

In sum, there was no evidence that it was necessary to wholly repaint either the Audacity or the Isabella to make them as seaworthy or practically serviceable as they were prior to the alleged incident. Under these circumstances, the law simply did not support Plaintiffs' claim for the cost of wholly repainting the Audacity and the Isabella. Nonetheless, Plaintiffs continued to maintain their claims for these repairs. As such, Rule 11 sanctions are warranted under paragraph (c) of the rule, and Defendant requests that this Court award him the attorney fees he incurred in defending this suit following his service of his Rule 11 motion on July 25, 2023

**F. The Attorney Fees and Non-Taxable Costs Sought by Defendant**

As discussed further below, Defendant requests that this Court award him the $20,825 in attorney fees and the $1,404.72 in non-taxable costs which he incurred as a direct result of Plaintiffs' and/or Plaintiffs' counsel's violation of Rule 11(b).

Defendant's fees are governed by its fee agreement with its law firm. Pursuant to the applicable fee agreement, Defendant's attorneys are paid for their services on an hourly basis at

the rate of $250/hour.  This rate is reasonable.  Specifically, "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also id at* 1303(The case law indicates that this Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.").

Here, Ms. Pearce's qualifications and experience merit her hourly rate.  Ms. Pearce, an experienced litigator, is admitted to practice in both the U.S. Southern District of Florida and U.S. Middle District of Florida.   She is a graduate of the University of Texas School of Law and the University of Florida's Levin College of Law.  Moreover, she has practiced law in this State for over 17 years.

The attorney fee amounts and non-taxable costs Defendant is seeking to recover, based on her hourly rate, are documented in the attached **Composite Exhibit 1**.  **Composite Exhibit 1** consists of redacted[5] invoices which Defendant has already paid. **Exhibit 2** is the court reporter's invoice for Mr. Edwards' Deposition. It includes certain non-taxable court reporter fees.

With respect to the attached invoices, Defendant is only seeking to recover the fees and costs which (1) directly resulted from the deposition of Mr. Edwards, (2) directly resulted from the discovery served to Dr. Arfeen and Tom George, and (3) those fees and costs incurred following the service following the service of his draft Rule 11 motion on July 25, 2023. Specifically, as to **Composite Exhibit 1**,  Defendant seeks only to recover the following amounts:

---

[5] The fee invoices for defense counsel have been redacted to both exclude time spent exclusively on the related lawsuit filed by Tom George against the parties in this matter and to preserve attorney-client privilege.

| Invoice Number | Time Keeper | Hourly Rate | Hours Requested off of this Invoice* | Amount of Fees Requested off of this Invoice | Amount of Non-Taxable Costs Requested off of this Invoice |
|---|---|---|---|---|---|
| Invoice No. 2477 | Pearce | $250/Hours | 8.2 | $2,050.00 | 0 |
| Invoice No. 2590 | Pearce | $250/Hours | 2.1 | $525.00 | 0 |
| Invoice No. 2611 | Pearce | $250/Hours | 26.1 | $6,525.00 | 0 |
| Invoice No. 2639 | Pearce | $250/Hours | 5 | $1,250.00 | 0 |
| Invoice No. 2661 | Pearce | $250/Hours | 11.1 | $2,775.00 | 0 |
| Invoice No. 49 | Pearce | $250/Hours | 17.4 | $4,350.00 | $800.60** |
| Invoice No. 122 | Pearce | $250/Hours | 0.5 | $125.00 | 0 |
| Invoice No. 242 | Pearce | $250/Hours | 1.4 | $350.00 | 0 |
| Invoice No. 267 | Pearce | $250/Hours | 11.5 | $2,875.00 | 0 |
|  |  |  | **Total Attorney Fees Requested** | $20,825.00 |  |
|  |  |  | **Total Non-Taxable Costs Requested** | $800.60 |  |

*Defendant has redacted the descriptions for the line items not subjection to this motion.

**This amount consists of attorney travel expenses to courthouse

Additionally, as reflected in **Exhibit 2**, Defendant paid a total of $1,525.37 in court reporter fees for Mr. Edward's deposition. *See* **Exhibit 2**. However, only $ 921.25 of that amount is taxable. *See* 89-1 (Itemization), line 18 (Amount Claimed for Edwards Deposition). As such, Defendant is also requesting that the court award him the balance of $604.12 in court reporter fees pursuant to this motion.

In sum, pursuant to this Motion, Defendant again asks that the Court award him the $20,825 in attorney fees and $1,404.72 in non-taxable costs that he incurred as a direct result of Plaintiffs' and/or Plaintiffs' counsel's violation of Rule 11(b).

14

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(B), I certify that Counsel for the Defendant made reasonable efforts to confer with Plaintiffs' counsel by email regarding the substance of this motion on April 22, 2024 and, then, multiple times on April 24, 2024.

WHEREFORE, Defendant, PATRICK J. PERIH, respectfully requests that this Court grant this re-filed motion and award Defendant the $20,825 in attorney fees and $1,404.72 in non-taxable costs that he incurred as a direct result of Plaintiffs' and/or Plaintiffs' counsel's violation of Rule 11(b).

Dated:  October 30, 2024.

Respectfully submitted,

**ST. AUGUSTINE LAW GROUP, P.A.**

/s/  Reba Abraham Pearce
Richard L. Brooks II, Esq.
FL Bar No.: 113529
Reba Abraham Pearce
FL Bar No.: 27369
2740 US Highway 1 South
St. Augustine, FL 32086
Phone: (904) 990 - 7777
rich@staugustinelawgroup.com
reba@staugustinelawgroup.com
service@staugustinelawgroup.com

*Attorneys for Defendant*

**VERIFICATION OF FEES AND NON-TAXABLE COSTS**

STATE OF FLORIDA
St. Johns County

I, Reba Abraham Pearce, Esq., pursuant to 28 USC s. 1746, state:

1. I am an attorney for Defendant, Patrick J. Perih, in the above captioned action. I am personally familiar with the legal work performed in this matter on Defendant's behalf and the resulting fees and costs.

2. I have reviewed the invoices for legal services and/or non-taxable costs attached to this motion. I believe, to the best of my knowledge, that the description of services rendered, time entries, fee amounts, and costs shown in the attached invoices are true and correct.

3. Moreover, all attorneys' fees and non-taxable costs requested by this motion were, to the best of my knowledge and understanding, incurred in connection with this case, necessary, and incurred in good faith for purposes of representing Defendant in this matter.

I declare, under penalty of perjury and under the laws of the United States of America, that the foregoing is true and correct.

Executed on October 30, 2024.

      /s/ Reba Abraham Pearce
     Reba Abraham Pearce, Esq.